Under seal

DMJ:LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOSEPH ROMANO
and RUSSELL BARNES,

            Defendants.

- - - - - - - - - - - - - - - - - - -X

**FILED**
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★   MAR 2 4 2010   ★

**LONG ISLAND OFFICE**

AFFIDAVIT IN SUPPORT OF
THE GOVERNMENT'S MOTION
TO REVOKE BAIL

09-CR-170(S-2)(JFB)

EASTERN DISTRICT OF NEW YORK, SS:

       CARL J. VACCARIELLO, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service (USPIS), duly appointed according to law and acting as such.

       For the reasons set forth below, there is clear and convincing evidence that beginning on or about February 2009 and continuing until the present, those dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH ROMANO (ROMANO) and RUSSELL BARNES (BARNES) (collectively the DEFENDANTS) did knowingly violate the conditions of their release pending trial in the case United States v. Jospeh Romano, et al., 09-CR-170(S-2)(JFB), in that the DEFENDANTS, together with others, knowingly and intentionally engaged in telemarketing activities in violation of Magistrate Judge A. Kathleen Tomlinson's Orders of November 24, 2008 and November 25, 2008 and this Court's orders of April 15, 2009, May 19, 2009 and

June 19, 2009, requiring the DEFENDANTS to refrain from engaging in telemarketing activities of any kind and that there is probable cause to believe that the DEFENDANTS have committed Federal crimes while on release, specifically mail and wire fraud conspiracy in violation of Title 18, United States Code, Section 1349.

(Title 18, United States Code, Sections 3148(b)(1)(A) & (B))

The source of Your deponent's information and the grounds for his belief are as follows:[1]

**INTRODUCTION AND BACKGROUND**

1.   I have been a Postal Inspector of the USPIS for 14 years and am currently assigned to the white collar fraud squad of the Hicksville Domicile.  Since October 2007, I have been assigned the investigation of the DEFENDANTS in the above-captioned matter. The allegations set forth below are based on interviews of witnesses, review of documentary evidence and evidence provided to me by other law enforcement agencies and other sources.  As set forth more fully below, the DEFENDANTS, along with others, have (1) formed Collectible Coins, Inc. (CCI) a company incorporated in the

---

[1]   Because the purpose of this Affidavit is to state only sufficient facts to support the motion for the issuance of an arrest warrant pursuant to 18 U.S.C. § 3148(b), I have not set forth herein all of the relevant facts and circumstances of which I am aware.

-2-

state of Florida;[2] (2) opened an office of CCI at 1300 North West 17th Avene, Suite 218, Delray Beach, Florida for the purpose of telemarketing coins; and (3) engaged in the telemarketing of coins using high-pressure and deceptive sales tactics including making misrepresentations to potential customers.

2.    On November 24, 2008, the defendant RUSSELL BARNES was arrested at All American Coin Inc. pursuant to an arrest warrant issued by the Honorable William D. Wall on November 21, 2008.  At the time of his arrest, and after being advised of his Miranda warnings, BARNES admitted defrauding his elderly clients by lying to them to induce them to buy coins and that he sold them coins that were overgraded and overvalued.  Later that day, BARNES was arraigned on a complaint before the Honorable A. Kathleen Tomlinson.  BARNES executed a $200,000 personal recognizance bond, agreeing to "refrain from telemarketing activities of any kind." GX 1.[3]

3.    On November 25, 2008, the defendant JOSEPH ROMANO surrendered to the United States Postal Inspectors after he was advised that a warrant had been issued for his arrest by the Honorable William D. Wall on November 21, 2008.  Later that day,

---

[2]    While a records check of the Florida Department of Corporations reveals that the registered agent/director of CCI is Dejuid Merkovic, as set forth more fully below, it is clear that Merkovic is acting as a "front man" for ROMANO.

[3]    GX refers to Government Exhibit.

-3-

ROMANO was arraigned on a complaint before the Honorable A. Kathleen Tomlinson.   ROMANO executed a $1,000,000 bond secured by two properties; a property located at 63/65 Montauk Highway, Copiague, New York and a property located at 67 Montauk Highway, Montauk, New York.   As a condition of the bond, ROMANO agreed to "refrain from telemarketing activities of any kind."   GX 2.

4.   On March 24, 2009, an indictment was returned in the Eastern District of New York charging the DEFENDANTS with conspiracy to commit mail and wire fraud and money laundering conspiracy.   As set forth in the indictment, between August 2001 and November 2008, Last Quarter Coin, Inc. (Last Quarter Coin), American Coin Company, Inc. (American Coin) and All American Coin Company, Inc. (All American Coin) (the SUBJECT COMPANIES) were companies engaged in the business of telemarketing coins.   The indictment further alleges that the DEFENDANTS falsely informed the customers that substantial profits would be realized by investing in coins and induced customers to purchased and continue to purchase coins by falsely promising the customers that there were investors waiting to purchase the coins from the customers once the customers had purchased the "complete roll set."   The DEFENDANTS also misrepresented the grade or condition of the coins.   The customers purchased coins worth approximately 10%-20% of the purchase price.

5.   In June 2009, ROMANO'S attorney, Charles Carnesi,

asked an Assistant U.S. Attorney if the government would consent to either removing the telemarketing prohibition from ROMANO'S bond or in the alternative agree to allow ROMANO to engage in the sale of coins via different means.  The government indicated an objection to ROMANO engaging in the sale of coins in any manner and advised Mr. Carnesi to bring the issue to the judge if Mr. Carnesi believed a modification was warranted.

**THE DEFENDANTS' VIOLATION OF THE CONDITIONS OF RELEASE**

6.    On January 12, 2010, a cooperating witness (CW #1) advised law enforcement agents that, shortly after ROMANO'S arrest in November 2008, ROMANO told CW #1 that he was going to open a telemarketing coin business in Florida and asked CW #1 to come to Florida to work for him at the coin company.

7.    CW #1 further advised that in December 2008, BARNES told CW #1 that ROMANO had also asked BARNES to come to Florida to work for ROMANO telemarketing coins.  BARNES also told CW #1 that ROMANO had moved all of the desks and equipment from All American Coin in Copiague, New York to Florida.

8.    A second cooperating witness (CW #2) advised that in the fall of 2009, CW #2 was present inside of CCI, located at 1300 NW 17th Ave, Suite 218, Delray Beach, Florida for a business meeting with ROMANO at ROMANO'S request.  At that location, CW #2 observed four or five telemarketers engaging in telemarketing activities. During the meeting, ROMANO described CCI as his business.  Finally,

ROMANO provided CW #2 with the cellular phone number (954) 254-6418 as a contact number for ROMANO.[4]

9.    A review of telephone records for (954) 254-6418 reveals that this telephone has had regular contact with ROMANO's parent's residence, ROMANO'S attorney Charles Carnesi, and ROMANO's residence in Florida.

10.  Telephone records also indicate that between December 5, 2009 and February 1, 2010, (965) 254-6418 has had contact with (631) 664-1209, a cell phone registered to Jeanne Limberg, 127 Kerrigan Road, Copiague, New York.  United States Pre-Trial Services ("PTS") has advised that BARNES currently resides at 127 Kerrigan Road, that Ms. Limberg is the paramour of BARNES and that BARNES has called the PTS office as directed utilizing cell phone number (631) 664-1209.

11.   Telephone records also reveal that number (561) 272-2721 is a land line number registered to Collectible Coin, 1300 NW 17th Ave, suite 218, Delray Beach, Florida. CCI advertises this telephone number on their website at www.collectiblecoinsinc.com. GX 3.

12.  A review of calling activity for (561) 272-2721 indicates calls have been placed to or from ROMANO's attorney Charles Carnesi, to BARNES at (631) 664-1209 and to a Levittown,

---

[4]    Phone records indicate that cell phone (954) 254-6418 is registered to Dejuid Merkovic.

-6-

New York residence that ROMANO owns.

13. Regions Bank records for account 95248250, a checking account registered to CCI show checks drawn on the account and payable to ROMANO's attorney Charles Carnesi[5] and BARNES. Also, four checks in the amount of $1,000 were payable to cash and endorsed by Karen Romano, ROMANO's wife. GX 4.

14. In March 2010, ROMANO advised PTS in Florida that he was unemployed.

15. A review of mail originating from CCI reveals that on January 25, 2010 and February 3, 2010, first class mail articles addressed for delivery to RUSSELL BARNES, 127 Kerrigan Rd, Copiague, New York 11726 were presented to a United States Postal Service (USPS) letter carrier for processing. Also, nine first class mail articles having a return address of JOSEPH ROMANO, 6011 N. Ocean Blvd, Ocean Ridge, FL 33435 (ROMANO's known residence) and addressed for delivery to various addresses were presented to a USPS letter carrier from CCI.

16. On January 5, 2010, the owner of the building at which CCI is located contacted ROMANO via e-mail at josephromano117@msn.com to remind ROMANO to remit the rent payment for Suite 218. ROMANO responded to the e-mail with the message "Just got back, and Im leaving again tomorrow but writing the

---

[5]   It appears likely that Mr. Carnesi is a witness to some of these events.

checknow. I will see you when I get back. JOE." GX 5. Check #1126, dated January 5, 2010 and drawn on the account of CCI was received by owner of the property. GX 6. On February 2, 2010 a second e-mail was sent by the owner of the building to ROMANO reminding him to remit the February rent. GX 7. MSN records reveal that the e-mail address josephromano117@msn.com is registered to ROMANO. GX 8.

17. On both February 2, 2010 & February 3, 2010, Your deponent established surveillance at CCI. On February 2, 2010, Your deponent took photographs of ROMANO exiting 1300 North West 17th Ave, in Delray Beach, Florida. GX 9. After exiting the location, ROMANO entered his Dodge Nitro, Florida license plate No. P306KQ. GX 10.

18. On February 3, 2010, United States mail packages addressed to John Doe #1 (JD #1), John Doe #2 (JD #2) and Jane Doe #3 (JD #3) were presented to a USPS letter carrier for processing at CCI.

19. On February 5, 2010, JD #1, JD #2 and JD #3 were interviewed concerning the packages mailed to them from CCI. They each advised that they had received a telephone call from a representative of CCI who was selling coins. Prior to their receiving that phone call they had never spoken with anyone from CCI.

20. On March 5, 2010, John Doe #4, (JD #4) a 91-year-old

-8-

man identified as a customer of CCI, advised law enforcement that he had purchased coins from CCI, and most recently purchased coins from a salesman named Jake Wilson (Wilson). JD #4 described Wilson as a male in his fifties having back problems and working from home utilizing a cell phone. During the conversations between JD #4 and Wilson, Wilson told JD #4 that it was to his advantage to build a "complete set" of coins and that others are interested in buying complete sets. JD #4 advised that he complained to Wilson that CCI refused his prior request to list the grades of the coins he purchased on the invoices that accompanied the coins. JD #4 asked Wilson to send JD #4 a letter including the grades of the coins JD #4 previously purchased. Wilson agreed to do so, but to date has not provided the letter.

21. On March 12, 2009, JD #4, called CCI and asked for Wilson's cell phone number. A receptionist calling herself "Nikki" provided (954) 304-1197 as Wilson's cell number.

22. On March 17, 2010, Wilson called JD #4 and spoke with JD #4 about purchasing coins. Wilson stated that CCI graded their coins according to an 11.8 grading schedule. In an effort to save their clients the $45-$55 grading fee charged by two largest services, Wilson used his own grading team consisting of individuals who had all previously worked one for the two largest

grading services.[6] Wilson advised that he paid his team more money than the two lead grading services. Wilson also advised that he was still trying to get the letter from CCI stating the grades of the coins that JD #4 previously purchased. When JD #4 inquired about selling the coins that he had purchased, Wilson told JD #4 that he would "hook [JD #4] up with people who will buy the coins.[7]

23. On March 18, 2010, JD #4 called CCI at (561) 272-2721 and was told that Wilson was working from their "other office." JD #4's call was then transferred to Wilson. During that conversation, Wilson told JD #4 that he was still working on the letter confirming the grades of the coins that JD #4 previously purchased and that he should have something to JD #4 by Monday.

24. On March 17, 2010, PTS advised that BARNES called their office to check in utilizing telephone number (954) 304-1197. Moreover, BARNES advised PTS that he is living on Long Island, is

---

[6] One of the misrepresentations repeatedly made by BARNES and the other telemarketers to the victims of the SUBJECT COMPANIES was that the SUBJECT COMPANIES used three "in-house" graders who had all worked at the two major grading companies (PCGS and NGC) in the past to grade their coins. The investigation revealed that ROMANO'S brother Vincent was the only person grading the coins for the SUBJECT COMPANIES and that Vincent had never worked at any grading company.

[7] Another one of the misrepresentations repeatedly made by BARNES and the other telemarketers to the victims of the SUBJECT COMPANIES was that an investor was "lined-up" to buy the customers coins once the customer completed his or her coin purchases. However, the investigation revealed that the "investor pitch" was a total fabrication as the "investors" did not exist.

Moreover, BARNES advised PTS that he is living on Long Island, is unemployed and currently receiving disability for a back injury.

25.    On March 16, 2010, John Doe #5 (JD #5), an 88-year-old man identified as a customer of CCI, advised law enforcement that he previously purchased coins from CCI.   Later that day, JD #5 called CCI and spoke with a salesperson calling himself Warren Lee. During the conversation, Lee advised JD #5 that he has worked at CCI for five years.   Lee also promised JD #5 that after JD #5 purchased coins from Lee, that Lee would help JD #5 sell his coin collection.   Lee, told JD #5 that "investors" would love JD #5's collection.

26.    Thereafter, JD #5 arranged for an appraisal of the four rolls of coins purchased from CCI.   The appraisal revealed that Lee misrepresented both the grade of the rolls and the value of the rolls.   JD #5 was told that the rolls were grade MS 64 and were worth more than the $1,580 purchase price, while the rolls were appraised as BU rolls valued at $610.

27. Based upon the evidence set forth above, Your deponent believe that the DEFENDANTS are in violation of the telemarketing ban condition of their bonds and are engaging in criminal activity.   The evidence demonstrates that ROMANO has opened and is running a telemarketing coin sales operation and that the salesmen, including BARNES, are making material misrepresentations to customers to induce them to purchase

overgraded and overvalued coins.

WHEREFORE, Your deponent respectfully requests that arrest warrants be issued for the DEFENDANTS so that they may be dealt with according to law.

FURTHERMORE, given the circumstances summarized above, Your deponent respectfully requests that this affidavit, application and the warrants remain under seal until ordered unsealed by the Court.

Carl J. Vacceriello
Postal Inspector
US Postal Inspection Service


Sworn to before me this
24th day of March 2010


JOSEPH F. BIANCO  A. Kathleen Tomlinson
UNITED STATES DISTRICT JUDGE Magistrate Judge
EASTERN DISTRICT OF NEW YORK

-12-