EWS:MFS
F. #2016V01164

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -                         09-CR-170 (EK)

JOSEPH ROMANO,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT OPPOSITION TO
## DEFENDANT JOSEPH ROMANO'S MOTION FOR COMPASSIONATE RELEASE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Matthew F. Sullivan
Assistant U.S. Attorney
(Of Counsel)

TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

LEGAL STANDARD........................................................................................................ 2

ARGUMENT .................................................................................................................... 5

   I.    The Defendant's Motion for Compassionate Release Should be Denied for Failure to Exhaust His Administrative Remedies ................................................................... 5

   II.   The Defendant Has Failed to Establish "Extraordinary and Compelling" Reasons Warranting His Release ............................................................................................. 6

      A.The Defendant's Conditions of Confinement at USP Florence ADMAX Are Not Extraordinary and Compelling Reasons to Reduce His Sentence................................. 6

      B.The Defendant's Circumstances Do Not Fall Within the Reasons Enumerated in U.S.S.G. § 1B1.13(b) ......................................................................................... 8

   III.   The Section 3553(a) Factors Do Not Support Compassionate Release........................... 11

CONCLUSION................................................................................................................ 14

i

TABLE OF AUTHORITIES

Cases                                                                                                                        Page(s)

Jiminian v. Nash,
    245 F.3d 144 (2d Cir. 2001) ...................................................................................................... 6

Levine v. Apker,
    455 F.3d 71 (2d Cir. 2006) ........................................................................................................ 6

Marcano v. Newman,
    789 F. Supp. 3d 239  (E.D.N.Y. 2025) ...................................................................................... 6

United States v. Alimehmeti,
    No. 16-CR-398 (PAE), 2024 WL 4880197 (S.D.N.Y. Nov. 25, 2024)...................................... 7

United States v. Alvarez,
    No. 89-CR-0229 (JS), 2020 WL 4904586 (E.D.N.Y. Aug. 20, 2020) ...................................... 5

United States v. Bolino,
    No. 06-CR-806 (BMC), 2020 WL 4749807 (E.D.N.Y. Aug. 17, 2020) .................................. 12

United States v. Brooker,
    976 F.3d 228 (2d Cir. 2020) ...................................................................................................... 3

United States v. Butler,
    970 F.2d 1017 (2d Cir. 1992) ............................................................................................... 4, 5

United States v. Cato,
    No. 16-CR-326 (ARR), 2020 WL 5709177 (E.D.N.Y. Sept. 24, 2020)................................ 3, 4

United States v. Corbett,
    No. 10-cr-184 (PAE), 2023 WL 8073638 (S.D.N.Y. Nov. 21, 2023)........................................ 4

United States v. Dekattu,
    No. 18-CR-474 (ARR), 2020 WL 7711842 (E.D.N.Y. Dec. 29, 2020) .................................... 4

United States v. Diaz,
    768 F. Supp. 3d 369 (E.D.N.Y. 2024) ...................................................................................... 9

United States v. Feliz,
    No. 16-CR-809 (VM), 2023 WL 8275897 (S.D.N.Y. Nov. 30, 2023)....................................... 3

United States v. Frias,
    No. 01-CR-307 (DLC), 2023 WL 2713631 (S.D.N.Y. Mar. 30, 2023) .................................. 12

United States v. Garcia,
    758 F. Supp. 3d 47 (E.D.N.Y. 2024) ........................................................................................ 9

United States v. Gotti,
    433 F. Supp. 3d 613 (S.D.N.Y. 2020) ................................................................................... 4, 6

United States v. Gray,
    No. 08-CR-421 (BMC), 2021 WL 293380 (E.D.N.Y. Jan. 28, 2021)............................... 13, 14

i

United States v. Gray,
No. 23-CR-118 (BMC), 2025 WL 2208330 (E.D.N.Y. Aug. 4, 2025) .............................. 3, 5, 6

United States v. Jones,
17 F.4th 371 (2d Cir. 2021) ....................................................................................... 11

United States v. Martinez,
No. 99-CR-1048 (DC), 2021 WL 1143744 (S.D.N.Y. Mar. 24, 2021) ................................... 13

United States v. Mirkovic,
No. 12-CR-691 (JFK), 2021 WL 1137980 (E.D.N.Y. Mar. 25, 2021) ................................... 11

United States v. Mohammed,
No. 18-CR-509 (ENV), 2024 WL 2701639 (E.D.N.Y. May 18, 2024) ................................ 7, 8

United States v. Monteleone,
No. 92-CR-351 (ARR), 2023 WL 2857559 (E.D.N.Y. Apr. 10, 2023) .................................. 12

United States v. Mustafa,
No. 04-CR-356 (AT), 2025 WL 786693 (S.D.N.Y. Mar. 12, 2025) ........................................ 7

United States v. Nunley,
792 F. Supp. 3d 327 (D. Conn. 2025) .................................................................................. 7

United States v. Pappa,
No. 97-CR-1005 (PKC), 2025 WL 1548762 (E.D.N.Y. May 30, 2025) ................................. 12

United States v. Pena,
No. 09-CR-341 (VM), 2020 WL 7408992 (S.D.N.Y. Dec. 17, 2020) .............................. 10, 11

United States v. Petit,
541 F. Supp. 3d 304 (S.D.N.Y. 2021) .................................................................................. 2

United States v. Romano,
No. 09-CR-170 (E.D.N.Y.) .............................................................................................. 1, 2

United States v. Romano,
630 F. App'x 56 (2d Cir. 2015) ........................................................................................... 1

United States v. Sayoc,
No. 18-CR-820 (JSR), 2025 WL 918864 (S.D.N.Y. Mar. 26, 2025) ...................................... 7

United States v. Shabazz,
No. 12-CR-33 (JLR), 2022 WL 5247196 (W.D. Wash. Oct. 6, 2022) ..................................... 7

United States v. Stewart,
No. 02-CR-1435 (LAP), 2025 WL 89298 (S.D.N.Y. Jan. 14, 2025) ...................................... 12

United States v. Suero,
No. 11-CR-84 (PAE), 2020 WL 4548043 (S.D.N.Y. Aug. 6, 2020) ...................................... 13

United States v. Tranese,
No. 17-CR-559 (CBA), 2021 WL 25371 (E.D.N.Y. Jan. 4, 2021) ........................................ 13

| Statutes | Page(s) |
|---|---|
| 18 U.S.C. § 1111 | 10 |
| 18 U.S.C. § 1114 | 10 |
| 18 U.S.C. § 1117 | 1, 10 |
| 18 U.S.C. § 3553(a) | 4, 11, 12, 13 |
| 18 U.S.C. § 3582(b) | 2 |
| 18 U.S.C. § 3582(c)(1)(A) | 2, 3, 5, 6, 11 |

| Sentencing Guidelines | Page(s) |
|---|---|
| U.S.S.G. § 1B1.13 | 3, 4, 10 |
| U.S.S.G. § 1B1.13(b) | 3, 8 |
| U.S.S.G. § 1B1.13(b)(1) | 8 |
| U.S.S.G. § 1B1.13(b)(2) | 8 |
| U.S.S.G. § 1B1.13(b)(3) | 9 |
| U.S.S.G. § 1B1.13(b)(4) | 10 |
| U.S.S.G. § 1B1.13(b)(5) | 10 |
| U.S.S.G. § 1B1.13(b)(6) | 10 |
| U.S.S.G. § 1B1.13(d) | 10 |

The government respectfully writes in response to the Court's February 18, 2026 Order directing the government to respond to defendant Joseph Romano's motion for compassionate release and a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 793) (the "Motion").  As discussed below, the Defendant's Motion fails to provide a basis for such relief and should be denied.

## BACKGROUND

The Defendant is currently serving two concurrent life sentences following a January 2014 jury trial at which he was convicted of two counts of conspiracy to murder two employees of the United States, in violation of 18 U.S.C. § 1117, specifically, a sitting United States District Court Judge and an Assistant United States Attorney.  As the Second Circuit explained when affirming the Defendant's conviction:

> Defendant Joseph Romano was convicted by a jury of conspiring to murder a federal judge and Assistant United States Attorney ("AUSA"), all in violation of 18 U.S.C. § 1117, in retribution for their roles in convicting and sentencing him for offenses related to a previous coin fraud scheme.  According to the evidence presented at trial, the conspiracy took root when Romano, who was serving a 180 month sentence for mail and wire fraud, informed a fellow inmate of his desire to murder the judge and AUSA and mutilate their bodies.  Based on this information, law enforcement set up a sting operation involving an undercover officer who posed as a contract killer.  After paying the officer to assault a mechanic with whom he had a financial dispute, Romano offered to pay $40,000 for the murder of the judge and AUSA.  The murders, of course, were never consummated.  Romano was arrested, convicted, and sentenced, inter alia, to life in prison for his crimes.

United States v. Romano, 630 F. App'x 56, 58 (2d Cir. 2015).  The Defendant's concurrent terms of life imprisonment were set to run consecutively to his sentence for his conviction on the underlying fraud scheme (i.e., the 180-month sentence).  The 180-month sentence in that case was imposed on February 9, 2012.  Minute Entry, United States v. Romano, No. 09-CR-170, ECF No. 520 (E.D.N.Y. Feb. 9, 2010).  However, the Defendant's bail was revoked and the Defendant

was remanded into custody on May 26, 2010.  Minute Entry, <u>United States v. Romano</u>, No. 09-CR-170, ECF No. 173 (E.D.N.Y. May 26, 2010).  Accordingly, the Defendant's 180-month sentence in the fraud case has run and he is incarcerated currently pursuant to the life sentences imposed in the murder conspiracy case.  The Defendant is an inmate at USP Florence ADMAX, and due to his concurrent life sentences, the BOP has no release date set for him.

On December 15, 2025, the Defendant's Motion (which is dated November 11, 2025) was filed on docket seeking a sentence reduction and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  As grounds for his Motion, the Defendant claims that (i) his conditions of confinement have affected his physical and mental health, (ii) his prolonged incarceration has negatively affected his familial relationships, and (iii) he has been rehabilitated with a low chance of recidivism.

<u>LEGAL STANDARD</u>

"A district court lacks the authority to alter a sentence after the time of sentencing, except where Congress has provided otherwise."  <u>United States v. Petit</u>, 541 F. Supp. 3d 304, 309 (S.D.N.Y. 2021) (citation omitted).  However, 18 U.S.C. § 3582(b) provides that, subject to certain narrowly prescribed exceptions, "a judgment of conviction that includes [a sentence to imprisonment] constitutes a final judgment."  One of the exceptions is the compassionate release provision found in 18 U.S.C. § 3582(c)(1)(A), which allows a court, upon the defendant's motion and in certain, limited circumstances, to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release . . . that does not exceed the unserved portion of the original term of imprisonment)."

A defendant must satisfy four conditions for a court to grant compassionate release under the First Step Act.  To qualify, a defendant must show: (1) that they have "fully exhausted

2

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." See generally 18 U.S.C. § 3582(c)(1)(A); see also United States v. Cato, No. 16-CR-326 (ARR), 2020 WL 5709177, at *2 (E.D.N.Y. Sept. 24, 2020) (summarizing the same requirements). All four conditions must be satisfied for a court to grant such a motion. See United States v. Gray, No. 23-CR-118 (BMC), 2025 WL 2208330 (E.D.N.Y. Aug. 4, 2025) (discussing how all conditions under 18 U.S.C. § 3582(c)(1)(A) must be met in order for the defendant to be granted compassionate relief by the court).

The applicable policy statement is found at U.S.S.G. § 1B1.13, which sets forth an updated list of "extraordinary and compelling reasons" that, alone or in combination, could warrant the reduction of a defendant's sentence. U.S.S.G. § 1B1.13(b).[1] These reasons include: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was a victim of abuse; (5) other reasons which "are similar in gravity" to the first four reasons; and (6) a change in the law if the defendant received

---

[1] Although the Second Circuit held in United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), that a prior version of U.S.S.G. § 1B1.13 was not "applicable" considering subsequent statutory amendments and thus did not limit courts' discretion in identifying extraordinary and compelling reasons warranting a sentence reduction, the most recent amendments to U.S.S.G. § 1B1.13 "have harmonized the Policy Statement with the" statute. United States v. Feliz, No. 16-CR-809 (VM), 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023). Brooker thus no longer controls, and compliance with § 1B1.13 is mandatory. See id.

3

an unusually long sentence and has served 10 years of that term of imprisonment. Id. A defendant's rehabilitation may be considered in combination with other circumstances, though it does not constitute an "extraordinary and compelling reason for purposes of this policy statement" on its own accord. Id. § 1B1.13(d). This guidance from the United States Sentencing Commission as to what constitutes "extraordinary and compelling reasons" now controls the analysis of a compassionate release motion. See United States v. Corbett, No. 10-cr-184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023).

The existence of extraordinary and compelling reasons under U.S.S.G. § 1B1.13, however, does not per se compel compassionate release. Rather, courts must also consider whether the factors under 18 U.S.C. § 3553(a), on balance, override the extraordinary and compelling reasons. If so, release is not warranted. As one district court explained:

> It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification. He is simply eligible for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

United States v. Gotti, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) (emphases added); see also United States v. Dekattu, No. 18-CR-474 (ARR), 2020 WL 7711842, at *2 (E.D.N.Y. Dec. 29, 2020) ("Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction").

A defendant seeking relief "bears the burden of demonstrating that he is eligible for compassionate release." Cato, 2020 WL 5709177, at *3; see also United States v. Butler, 970 F.2d

4

1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

ARGUMENT

I.    The Defendant's Motion for Compassionate Release Should be Denied for Failure to Exhaust His Administrative Remedies

As a threshold matter, the Defendant has failed to exhaust his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A), and his Motion should be denied on that ground alone. See Gray, 2025 WL 2208330, at *1 (explaining "defendant's failure to exhaust administrative remedies is a threshold matter preventing the Court from considering a Section 3582 application") (internal citations and quotations omitted). A defendant may move for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). In his Motion, the Defendant does not claim that he has "fully exhausted all administrative appeals in his motion," nor that he has even attempted to do so. The Defendant also has provided no evidence to show that thirty days have lapsed since the warden received his request for relief, including even the purported date on which he sought relief. Further, the BOP has informed the government that there is no record that the Defendant filed a request for compassionate release and/or reduction in sentence with the warden of USP Florence ADMAX, as is required before the Court can consider the Motion. "Absent proof that such a request was made, the Court cannot verify that [Defendant] has exhausted his administrative remedies and the Court is thus powerless to act." United States v. Alvarez, No. 89-CR-0229 (JS), 2020 WL 4904586, at *3 (E.D.N.Y. Aug. 20, 2020) (internal citations and

5

quotations omitted). The Defendant has thus failed to meet his burden, and this failure "alone precludes this Court from granting him relief." <u>Gray</u>, 2025 WL 2208330, at *1.

II.   <u>The Defendant Has Failed to Establish "Extraordinary and Compelling" Reasons Warranting His Release</u>

Even assuming <u>arguendo</u> that the Defendant had met the exhaustion requirement, his Motion still fails to meet the "burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." <u>Gotti</u>, 433 F. Supp. 3d at 619.

A.   <u>The Defendant's Conditions of Confinement at USP Florence ADMAX Are Not Extraordinary and Compelling Reasons to Reduce His Sentence</u>

The Defendant asserts that his conditions of confinement—particularly, his solitary confinement—is a basis for a sentence reduction and his compassionate release because it is "tantamount to having spent a minimum of sixty (60) years in prison" and he has "served what is the equivalency to life in prison already." Motion at 7 & 26. The Defendant states that he has been subject to "onerous, abhorrent, and repugnant conditions of confinement at the ADX," describing the restrictions that he has been subject to, and also asserting there is no basis for placing him in solitary confinement under these restrictive measures. Motion at 14-16, 20-21. Nothing about the Defendant's conditions of confinement, however, provides an extraordinary and compelling reason for a sentence reduction.[2]

---

[2]   To the extent the Defendant is challenging his conditions of confinement, the proper vehicle is not a motion for a sentence reduction under § 3582(c)(1)(A), but rather a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. <u>See</u> <u>Jiminian v. Nash</u>, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the . . . type of detention and prison conditions."); <u>Levine v. Apker</u>, 455 F.3d 71, 78 (2d Cir. 2006) ("A challenge to the execution of a sentence—in contrast to the imposition of a sentence—is properly filed pursuant to § 2241."). However, this Court lacks the jurisdiction to consider a § 2241 petition because the proper venue for such a petition is the district of confinement, namely, the District of Colorado. <u>See</u> <u>Marcano v. Newman</u>, 789 F. Supp. 3d 239, 241 (E.D.N.Y. 2025).

Courts have regularly rejected motions for sentence reductions when faced with the restrictive measures present at USP Florence, and nothing contained in the Defendant's Motion demonstrates that his situation warrants a different result.  See, e.g., United States v. Mustafa, No. 04-CR-356, 2025 WL 786693, at *5 (S.D.N.Y. Mar. 12, 2025) (declining to find that solitary confinement at ADX Florence is an extraordinary and compelling circumstance justifying release); United States v. Alimehmeti, No. 16-CR-398 (PAE), 2024 WL 4880197, at *6-*7 (S.D.N.Y. Nov. 25, 2024) (declining to consider incarceration in ADX Florence's H-Unit to be an extraordinary and compelling reason for sentence reduction); United States v. Shabazz, No. 12-CR-33 (JLR), 2022 WL 5247196, at *4 (W.D. Wash. Oct. 6, 2022) (declining to find incarceration at ADX Florence to be an extraordinary and compelling reason for sentence reduction when defendant's "conditions of confinement at ADX Florence are not unique, as every defendant incarcerated at ADX Florence is subject to those same conditions").

The Defendant's conditions of confinement at USP Florence ADMAX are not unique, as every defendant incarcerated there is subject to those same conditions, and therefore those conditions cannot support a claim for compassionate release.  See United States v. Nunley, 792 F. Supp. 3d 327, 333 (D. Conn. 2025) ("While solitary confinement and the harsh conditions experienced by Mr. Nunley during his incarceration at ADX Florence warrant consideration, placement in a highly secure prison is not clearly 'extraordinary' where Mr. Nunley's experience was not unique in comparison to the rest of his unit or somehow more punitive and harsher than the standard, intended conditions of that prison."); see also United States v. Sayoc, No. 18-CR-820, 2025 WL 918864, at *2 (S.D.N.Y. Mar. 26, 2025) ("An experience shared by his fellow inmates that poses no unique burden to Mr. Sayoc himself does not provide a ground for this Court to grant compassionate release."); United States v. Mohammed, No. 18-CR-509 (ENV), 2024 WL

2701639, at *4 (E.D.N.Y. May 18, 2024) ("Mohammed's complaints about FCI Danbury refer only to the facility's general conditions and therefore do not compel her compassionate release.").

      B.      <u>The Defendant's Circumstances Do Not Fall Within the Reasons Enumerated in U.S.S.G. § 1B1.13(b)</u>

In addition, while not addressed specifically in his Motion, the Defendant's circumstances do not fall within any of the enumerated categories in U.S.S.G. § 1B1.13(b) that would provide an "extraordinary and compelling reason" for a sentence reduction.

First, the Defendant's medical circumstances do not present an extraordinary and compelling reason for compassionate release because, to the extent the Defendant asserts he has health issues, they do not fall with the categories identified in U.S.S.G. § 1B1.13(b)(1)(A)-(D). See, e.g., Motion at 25 (identifying certain health conditions purportedly arising from the Defendant's conditions of confinement). The Defendant does not assert that he is suffering from a terminal illness, or a condition that either diminished his ability to provide self-care or requires specialized care not being provided. The Defendant also does not claim that he is incarcerated at a facility affected by an ongoing outbreak of infectious disease or health emergency. In addition, the circumstances in U.S.S.G. § 1B1.13(b)(2), regarding the age of the Defendant, do not apply because the Defendant is not at least 65 years old, see Motion at 7 (noting that the Defendant is 62 years old), and he also has not demonstrated that he is experiencing a "serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(2)(B). To the extent the Defendant asserts issues with his physical or mental health, they do not rise to the level of a "serious deterioration" and appear attributed to his conditions of incarceration and not "the aging process." See, e.g., Motion at 5 (stating he weighs over 400 pounds and has high blood pressure, elevated cholesterol readings, and pre-diabetes); at 7-8 (asserting that "imprisonment has exascerbated [sic] my mental illness" but explaining that it has forced him to focus on how he

8

misses his family).  The Defendant also has not served at least 10 years or 75% of his concurrent terms of life imprisonment because those terms only began to run in the last few years after he completed his 180-month sentence from his fraud conviction.  Accordingly, the Defendant's medical condition does not rise to the level that courts have found constitute extraordinary and compelling circumstances.  See United States v. Garcia, 758 F. Supp. 3d 47, 57 (E.D.N.Y. 2024) (collecting cases).

Regarding the Defendant's family circumstances, they do not fall within the categories enumerated in U.S.S.G. § 1B1.13(b)(3)(A)-(D).  The Defendant's Motion contains a lengthy description of his family—from his grandparents down through his children—that demonstrates a substantial family structure exists and has existed throughout his life. See Motion at 28-66; see also id. at 88-93 (letters from the Defendant's wife, sister, and two sons in support of his Motion).  The Defendant's wife appears to be present in the lives of the Defendant's three adult children, and the Defendant' siblings appear to live within a close distance of the Defendant's former home.  See Motion at 59 (noting the Defendant's wife is a continued presence in his adult children's lives); at 60-64 (describing the Defendant's young adult children with ages between 22 and 27); at 64-65 (stating the Defendant's three brothers and one sister all live within walking distance of his former home).  The Defendant has failed to demonstrate that the medical situation of his family members is an extraordinary and compelling reason warranting a sentence reduction. See United States v. Diaz, 768 F. Supp. 3d 369, 376-77 (E.D.N.Y. 2024) (declining to find the medial situation of the defendant's mother was an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b) because the defendant failed to show his mother was incapacitated or that he was her only caregiver).

Next, none of the facts stated in the Defendant's Motion indicate that he was a victim of sexual abuse or physical abuse resulting in serious bodily injury by a correctional officer while in custody. U.S.S.G. § 1B1.13(b)(4). Likewise, nothing in the Defendant's Motion presents any other circumstance, or combination of circumstances, that are a similar gravity to the first four reasons. U.S.S.G. § 1B1.13(b)(5).

Finally, the circumstances of U.S.S.G. § 1B1.13(b)(6) do not apply to the Defendant because he did not receive "an unusually long sentence," he has not served at least 10 years of his term of imprisonment, and there has been no change in the law that would produce a "gross disparity" between the Defendant's sentence and a sentence likely to be imposed today. The Defendant's sentence was not unusually long because he was sentenced to the statutory minimum—life imprisonment—for conspiracy to commit premeditated murder of an officer or employee of the United States. See 18 U.S.C. §§ 1111, 1114, 1117. The Defendant also has not served at least 10 years of his term of imprisonment because his concurrent life sentences were ordered to run consecutively to his 180-month sentence from his underlying fraud conviction. Finally, there has been no change in the law that would produce a gross disparity in the Defendant's sentence if he were re-sentenced today.

In his Motion, the Defendant points to his efforts at rehabilitation as a reason to merit compassionate release, and in particular, the Defendant includes a discussion of the "Re-Entry Plan, Goals, and Objectives of Joseph Romano." See Motion at 68-77. But rehabilitation "is not, by itself, an extraordinary and compelling reason" under U.S.S.G. § 1B1.13(d). And while it is commendable that the Defendant has developed a plan to follow if he were permitted to leave incarceration, this does not rise to the level of warranting the extraordinary remedy of compassionate release under U.S.S.G. § 1B1.13. See, e.g., United States v. Pena, No. 09-CR-341

10

(VM), 2020 WL 7408992, at *7 (S.D.N.Y. Dec. 17, 2020) (rehabilitative efforts, while praiseworthy, "do not meet the 'extraordinary and compelling' standard"). Given that the other factors discussed above do not merit compassionate release, the Defendant's rehabilitation efforts and plan for re-entry into society do not amount to a standalone basis for relief or a basis in conjunction with any other factors.

III.    The Section 3553(a) Factors Do Not Support Compassionate Release

Even if the Defendant had exhausted his administrative remedies and presented extraordinary and compelling reasons justifying a sentence reduction, the Court must still consider the factors contained in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A); see also United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)."). The § 3553(a) factors may serve as "an alternative and independent basis for denial of compassionate release." Id. at 374 (quotation omitted). Applying the relevant § 3553(a) factors here shows that compassionate release is not warranted.

To start, the nature, circumstances, and seriousness of the offense weigh heavily in favor of denying the Motion. See 18 U.S.C. § 3553(a)(1) & (2)(A). The severity of the Defendant's offense conduct—a plot that targeted the criminal justice system in this country—is hard to overstate. The Defendant sought to murder and mutilate a judge and AUSA in retaliation for them simply fulfilling their roles serving the public as they were appointed and hired to do. When another court denied the compassionate release motion from the Defendant's co-conspirator, Dejvid Mirkovic, the court described the offense conduct as "the most serious and reprehensible the Court has encountered." United States v. Mirkovic, No. 12-CR-691 (JFK), 2021 WL 1137980, at *5 (E.D.N.Y. Mar. 25, 2021). The Defendant was the center of this murder-for-hire conspiracy

11

and therefore the § 3553(a) factors would weigh even more heavily against release than it did for his co-conspirator. There is no question that the gravity and the seriousness of the Defendant's conduct continue to warrant the life sentences that he is serving. See, e.g., United States v. Stewart, No. 02-CR-1435 (LAP), 2025 WL 89298, at *7 (S.D.N.Y. Jan. 14, 2025) (denying compassionate release and finding life sentence appropriate for man convicted of murder); United States v. Frias, No. 01-CR-307 (DLC), 2023 WL 2713631, at *1 (S.D.N.Y. Mar. 30, 2023) (denying compassionate release and finding life imprisonment not unreasonable where defendant was convicted of murder). The Defendant's concurrent life sentences also significantly promote general deterrence. United States v. Pappa, No. 97-CR-1005 (PKC), 2025 WL 1548762, at *9 (E.D.N.Y. May 30, 2025).

The need to afford adequate deterrence weighs strongly in favor of the Defendant's continued incarceration. The Defendant has only just begun to serve his concurrent life sentences that were imposed after he masterminded his murder-for-hire conspiracy. The life sentences were set to run consecutively to his 180-month sentence from his fraud conviction, which was imposed in February 2012, but the Defendant had been in pre-trial detention since March 2010. The Defendant, therefore, has served (at most) only a handful of years of his concurrent life sentences, which is far below the national average for murder convictions—let alone a murder conspiracy targeting a federal judge and AUSA. See United States v. Monteleone, No. 92-CR-351 (ARR), 2023 WL 2857559, at *5 (E.D.N.Y. Apr. 10, 2023) (noting that "the national average for a murder conviction is closer to 20 years"). The Defendant's concurrent life sentences serve a purpose by appropriately "deter[ring] others from emulating his behavior." United States v. Bolino, No. 06-CR-806 (BMC), 2020 WL 4749807, at *6 (E.D.N.Y. Aug. 17, 2020). The Defendant's continued incarceration is necessary to punish him and to protect the public from further criminal behavior,

12

as well as to promote respect for the law and to send a clear message that those who commit crimes that target the heart of this country's justice system will be held accountable and appropriately punished. See United States v. Suero, No. 11-CR-84 (PAE), 2020 WL 4548043, at *4 (S.D.N.Y. Aug. 6, 2020) (internal citations and quotations omitted) (denying release because "[p]otential doers of such extreme wrongs need to be held in check as much as possible by the prospect of a life-altering sentence"); United States v. Martinez, No. 99-CR-1048 (DC), 2021 WL 1143744, at *4 (S.D.N.Y. Mar. 24, 2021) (concluding that releasing a defendant serving a life sentence after fewer than 20 years in prison "would undermine respect for the law and the need for a just sentence, and weaken the deterrent effect on future criminal conduct"). The Defendant's history and characteristics also counsel against early release. In his Motion, the Defendant continues to shirk responsibility and to make assertions regarding his "actual innocence." See, e.g., Motion at 8 (asserting he was deprived of his right "to evince my wholehearted beliefs in my 'actual innocence'"), at 20 (claiming he was placed under conditions of confinement "to obstruct my ability to prove my 'actual innocence'").

In sum, the Defendant's sentence remains sufficient but not greater than necessary to protect the public and deter future crimes by the Defendant, as well as to serve as just punishment for his offense conduct. A reduction in the Defendant's sentence would "fail to achieve the important policies of the § 3553(a) factors" recognized by the Court at sentencing— "namely, providing just punishment, affording adequate deterrence, and promoting respect for the law." United States v. Tranese, No. 17-CR-559 (CBA), 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021). Granting him compassionate release now "would diminish his transgressions and undermine the goals of the original sentence, among them, the need to dispense adequate punishment and to deter others." United States v. Gray, No. 08-CR-421 (BMC), 2021 WL 293380,

13

at *3 (E.D.N.Y. Jan. 28, 2021).  For these reasons, even if the Defendant could establish an extraordinary and compelling reason for compassionate release—which he fails to do—that reason would be substantially outweighed by the § 3553(a) factors that support leaving the Defendant's original sentence intact.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the Defendant's motion for compassionate release should be denied.

Dated: Brooklyn, New York
March 19, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/
Matthew F. Sullivan
Assistant U.S. Attorney
(718) 254-6161

14

<u>CERTIFICATE OF SERVICE</u>

I, Matthew F. Sullivan, hereby certify that on March 19, 2026, I caused a copy of the Government Opposition to Defendant Joseph Romano's Compassionate Release Motion to be served by Certified U.S. Mail upon defendant Joseph Romano at the following address:

Joseph Romano (Reg. No. 72247-053)
USP Florence ADMAX
U.S. Penitentiary
P.O. Box 8500
Florence, CO 81226

By:    /s/                
             Matthew F. Sullivan
             Assistant U.S. Attorney
             (718) 254-6161