Joseph Romano
Reg. No. 72247-053
USP Florence ADMAX
P.O. Box 8500
Florence, CO 81226

May 5, 2026

Clerk of Court
United States District Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201



**RE:** *United States v. Joseph Romano*, No. 2:09-cr-00170 (EK)
Enclosed Filing: Defendant's Reply to Government Opposition (Doc. 798)

Dear Clerk of Court:

Enclosed please find the Defendant's Reply to the Government's Opposition to Motion for Compassionate Release (Doc. 798) for filing and docketing in the above-referenced case.

I am housed at USP Florence ADMAX under Special Administrative Measures. All outgoing legal mail is subject to institutional and FBI review, resulting in delays from lockbox to docket, including the twenty-day delay reflected at Doc. 794, PageID #: 5402. I placed this Reply in the institutional lockbox on May 6, 2026, and respectfully request that the Court note this date when evaluating timeliness.

A copy has been served upon AUSA Matthew F. Sullivan via institutional mail, as indicated in the enclosed Certificate of Service. Thank you for your assistance in docketing this matter.

Respectfully,

Joseph Romano
Reg. No. 72247-053

REC'D IN PRO SE OFFICE
JUN 12 '26 PM 2:47

UNITED STATES OF AMERICA,

No. 2:09-cr-00170 (EK)

- against -

JOSEPH ROMANO,
*Defendant.*

## DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION
## TO MOTION FOR COMPASSIONATE RELEASE (Doc. 798)

### INTRODUCTION

Defendant Joseph Romano, Reg. No. 72247-053, pro se, respectfully submits this reply to the Government's Opposition (Doc. 798, filed March 19, 2026) to his Motion for Compassionate Release (Doc. 793). The Government's Opposition contains factual errors and misapplied case law, and fails to address the documented conditions that form the basis of this Motion.

### POINT I

*The Government Incorrectly States That*

*Life Imprisonment Was the Statutory Minimum*

The Government's most serious error appears at PageID #: 5526 of its Opposition, where it argues that the sentencing guidelines provision, U.S.S.G. § 1B1.13(b)(6), does not apply because the Defendant's sentence "was not unusually long because he was sentenced to the statutory minimum—life imprisonment—for conspiracy to commit premeditated murder of an officer or employee of the United States."

That statement is false. The Defendant was convicted of conspiracy under 18 U.S.C. § 1117—the very statute the Government cites. Section 1117 provides that the penalty for conspiracy to murder a federal officer is "imprisonment for any term of years or for life." The statute on its face does not make life imprisonment the statutory minimum; it authorizes imprisonment for any term of years or for life. The sentencing transcript confirms it.

At sentencing on April 14, 2014, Judge Keenan expressly stated: "I recognize that the guidelines, the sentencing guidelines are advisory and not mandatory." Doc. 178, p. 53, PageID #: 1829, United States v. Romano, No. 1:12-cr-00691-DC (E.D.N.Y.). He then identified the guideline range as life imprisonment (offense level 49, criminal history category III). He noted the Probation Department's recommendation of 35 years on each count, to run after the fraud sentence. He noted the defense's request for 24 years. He noted the Government's request for life on each count, also to run after the fraud sentence. Doc. 178, pp. 53–54, PageID #: 1829–1830.

If life imprisonment were the statutory minimum, the Probation Department's recommendation of 35 years and the defense's request for 24 years would have been meaningless. Judge Keenan would not have discussed them. He would not have stated that the guidelines were "advisory and not mandatory." He would have imposed life as a matter of law without any discussion of alternatives.

Instead, Judge Keenan weighed the competing recommendations, considered the factors under 18 U.S.C. § 3553(a), and chose life based on the seriousness of the offense and the need for deterrence. Doc. 178, pp. 54–55, PageID #: 1830–1831. That is a judge exercising discretion, not applying a mandatory minimum.

The Government's argument under § 1B1.13(b)(6) depends on the premise that the sentence was not "unusually long." That premise falls apart once the "statutory minimum" claim is shown to be wrong. The sentencing record shows the Court had the authority to impose a lesser sentence and chose not to. Whether that choice remains appropriate, given the Defendant's conditions of confinement and the passage of time, is precisely the question this Motion asks the Court to consider. Moreover, even if life imprisonment had been mandatory, that would not foreclose relief under 18 U.S.C. § 3582(c)(1)(A). See United States v. Halvon, 26 F.4th 566, 570–71 (2d Cir. 2022).

## POINT II

### *The Government's Background Section Contains a Date Error*

At PageID #: 5517 of its Opposition, the Government states that "[t]he 180-month sentence in that case was imposed on February 9, 2012," but then cites the minute entry as

"(E.D.N.Y. Feb. 9, 2010)." Those two dates cannot both be correct. The Government contradicts itself in the same sentence.

The Defendant was not taken into federal custody until March 25, 2010. Doc. 178, pp. 33–34, PageID #: 1809–1810. He could not have been sentenced before he was even in custody. The Court should not rely on a factual background that contains a self-contradictory date for the foundational sentencing event in this case.

## POINT III

### *The Exhaustion Argument Ignores the Special Administrative Measures*

The Government argues at PageID #: 5521–5522 that the Motion should be denied because the Defendant failed to exhaust administrative remedies. The Government states there is "no record" that the Defendant filed a request for compassionate release with the warden of USP Florence ADMAX.

The Government's argument does not mention that the Defendant is held under Special Administrative Measures. Those measures restrict his outgoing mail to three pages per week, impose review delays of up to sixty business days, and require FBI monitoring of every communication. This Court has acknowledged that "the special administrative measures Romano is under makes it difficult to send information 'in an expedient manner.'" Docket Text Order, No. 2:09-cr-00170-EK, entered July 13, 2022.

The record shows what those delays look like in practice. The envelope attached to Doc. 794 shows that the Defendant placed his supplemental letter in the prison lockbox on November 28, 2025. The Denver postmark reads December 11, 2025. The court filing stamp reads December 18, 2025. Doc. 794, PageID #: 5402. That is a thirteen-day delay just to get a letter out of the building, and twenty days from lockbox to the court's docket. If it takes thirteen days to mail a single letter, the administrative remedy process the Government relies on cannot be applied as if the Defendant were free to walk down a hallway and file a form.

The Government's exhaustion argument mistakes delay for inability. The Defendant was plainly capable of reading the Government's Opposition, checking it against his own sentencing record, and identifying the central factual error in that filing—the false assertion that life

imprisonment was the statutory minimum. What the Government ignores is not the Defendant's capability, but the transmission barriers imposed by ADX and the Special Administrative Measures. As the record already shows, a single piece of outgoing legal mail took thirteen days to travel from prison lockbox to postmark and twenty days to reach the docket. The obstacle is not comprehension. It is the time and restriction placed on every piece of paper leaving the institution.

The Government is aware of these restrictions. The same United States Attorney's Office is simultaneously litigating Romano v. United States, No. 26-15 (2d Cir.), where the SAMs restrictions are extensively documented. The Government should not be permitted to ignore those restrictions when arguing exhaustion in this case.

## POINT IV

### *The Government Cites Inapplicable Authority on Conditions of Confinement*

In footnote 2 at PageID #: 5522, the Government argues that the "proper vehicle" for challenging conditions of confinement is a habeas petition under 28 U.S.C. § 2241, and cites Jiminian v. Nash, 245 F.3d 144 (2d Cir. 2001), Levine v. Apker, 455 F.3d 71 (2d Cir. 2006), and Marcano v. Newman, 789 F. Supp. 3d 239 (E.D.N.Y. 2025).

Those cases address where and how a prisoner can file a standalone challenge to prison conditions. They do not address a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) that asks the Court to consider conditions of confinement as part of the reason release is warranted.

The Defendant is not asking this Court to order a change in his conditions. He is asking this Court to consider those conditions—solitary confinement for over a decade, painted-over windows that block all natural light, and documented psychological harm—as part of the total picture of why his continued incarceration is extraordinary and compelling. The Government's cited cases do not say conditions of confinement can never be considered in a compassionate release analysis. They say a standalone conditions challenge belongs in a different type of filing. That is a different point.

## POINT V

### *The Government Asks the Court to Hold the*
### *Defendant's Innocence Claims Against Him*

At PageID #: 5529, the Government argues that the Defendant's "history and characteristics also counsel against early release" because he "continues to shirk responsibility and to make assertions regarding his 'actual innocence.'"

The Defendant has a pending proceeding in the United States Court of Appeals for the Second Circuit, Romano v. United States, No. 26-15 (2d Cir.), challenging the murder conspiracy conviction based on newly discovered evidence. A defendant who is actively pursuing a legal challenge to his conviction in a higher court should not be treated as "shirking responsibility" for doing so. The Court may consider the Defendant's history and characteristics without treating his use of available legal remedies as a mark against him.

## POINT VI

### *The Government's Time-Served Description Is Misleading*

The Government's own Opposition confirms that "the Defendant's 180-month sentence in the fraud case has run and he is incarcerated currently pursuant to the life sentences imposed in the murder conspiracy case." Doc. 798, PageID #: 5517–5518. Yet the Government describes the Defendant as having served "at most only a handful of years of his concurrent life sentences." Doc. 798, PageID #: 5528.

Even if the life sentences formally began running after the fraud sentence ended, the Defendant has been in continuous federal custody since March 25, 2010—over sixteen years. He has been at ADX Florence under Special Administrative Measures since June 1, 2015—nearly eleven years. The phrase "handful of years" does not reflect the reality of what the Defendant has experienced.

## POINT VII

### *The Government Misreads the Defendant's Family Record*

At PageID #: 5525, the Government argues that the Defendant's family circumstances do not warrant relief because his wife "appears to be present in the lives of the Defendant's three

adult children" and his siblings "all live within walking distance of his former home." The Government treats the family's survival as evidence that no harm has occurred.

The Defendant's three children were eleven, ten, and seven years old when he was taken into federal custody on March 25, 2010. They are now adults. The Defendant missed their entire childhood. Under the Special Administrative Measures in effect since June 1, 2015, all visits have been non-contact and monitored. The Defendant has not had physical contact with any family member for nearly eleven years, despite his family visiting regularly throughout his incarceration. Every telephone call has been monitored by the FBI. Every piece of mail has been reviewed. The relationship between this father and his children has been maintained entirely through restricted, monitored communication from highly restrictive confinement under the Special Administrative Measures. See Doc. 793 at 88–93 (family letters); Exhibit R to Doc. 793 (SAMs documentation).

The letters from the Defendant's wife, sister, and two sons, submitted at Doc. 793, pages 88–93, show a family that has held together despite sixteen years of separation and wants him home. The Government does not dispute the genuineness of those letters. That this family endured is not evidence that the separation caused no harm. It is evidence of their strength. The Court may consider that strength, and the toll this separation has taken, as part of the totality of circumstances.

## POINT VIII

### *The Conviction on Which the Life Sentences Rest Is Under Active Challenge*

The Government's analysis of the sentencing factors at PageID #: 5527–5530 treats the murder conspiracy conviction as settled and beyond question. The Defendant respectfully submits that a pending proceeding in the Second Circuit is a changed circumstance the Court may consider. In Romano v. United States, No. 26-15 (2d Cir.), the Defendant has filed a motion seeking authorization to challenge the murder conspiracy conviction based on newly discovered judicial findings about the key government witness whose account was cited as the pre-contact predisposition basis in Doc. 168. See Doc. 168 at 2, PageID #: 1672, No. 1:12-cr-00691-DC (E.D.N.Y.) (identifying Gerald Machacek's account as the basis for the finding that the

Defendant had a plan before the Government became involved). The Court need not decide the merits of that challenge, but it should not ignore that a serious challenge is pending.

The Government cites United States v. Mirkovic, No. 12-CR-691 (JFK), 2021 WL 1137980 (E.D.N.Y. Mar. 25, 2021), at PageID #: 5527, where Judge Keenan called the offense conduct "the most serious and reprehensible the Court has encountered." Judge Keenan is the same judge who presided at the Defendant's trial and later sentenced the key government witness, Gerald Machacek, to 42 months—58 months below the bottom of the guidelines range of 100 to 125 months. Sentencing Tr. at 4:9–11, 17:21–24, United States v. Velazquez, No. 2:11-cr-00639-JFB (E.D.N.Y. June 30, 2014). At that sentencing, Judge Keenan stated on the record: "I believe he testified truthfully." Id. at 16:22–24. The reliability of that witness is what the pending Second Circuit proceeding challenges.

The Defendant respectfully asks the Court to weigh the sentencing factors in light of this pending challenge, and at minimum to hold this Motion in abeyance rather than deciding it as though no serious question about the underlying conviction exists.

## CONCLUSION

For the reasons stated above, the Defendant respectfully requests that the Court grant his Motion for Compassionate Release (Doc. 793), or in the alternative, hold the Motion in abeyance pending the outcome of Romano v. United States, No. 26-15 (2d Cir.).

Respectfully submitted,

Joseph Romano, Reg. No. 72247-053
USP Florence ADMAX
P.O. Box 8500
Florence, CO 81226

Dated: May 5 , 2026

## CERTIFICATE OF SERVICE

I, Joseph Romano, hereby certify under penalty of perjury that on _May 6_, 2026, I caused a true and correct copy of the foregoing Defendant's Reply to Government Opposition to Motion for Compassionate Release (Doc. 798) to be served by depositing the same in the institutional mail addressed to:

> Matthew F. Sullivan
> Assistant United States Attorney
> United States Attorney's Office
> Eastern District of New York
> 271 Cadman Plaza East
> Brooklyn, New York 11201

Dated: _May 5_, 2026

Joseph Romano, Reg. No. 72247-053
USP Florence ADMAX
P.O. Box 8500
Florence, CO 81226

Name: Romano, Joseph
Reg No: (72247053)
U.S. PENITENTIARY MAX.
P.O. BOX 8500
FLORENCE, CO 81226-8500
cm-26-126



DENVER CO

19 MAY 2026

%o Clerk of the Court,
Honorable Judge Komitee
Eastern District of New York
271 Cadman Plaza East
Brooklyn, N.Y. 11201

11201-183599

Prison Legal 5-6-26